# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: SUBPOENA TO JEFF MORTIMER | MBD No. 22-mc-91519 |
| STEPHEN WALDEN and LESLIE WALDEN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE BANK OF NEW YORK MELLON CORPORATION and BNY MELLON, N.A,<br><br>Defendants. | United States District Court for the Western District of Pennsylvania<br>Civil Action No. 2:20-cv-01972-CRE |

### NON-PARTY JEFF MORTIMER'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER

**I.      INTRODUCTION**

On October 13, 2022, Stephen Walden and Leslie Walden, Plaintiffs in *Stephen Walden et al. v. The Bank of New York Mellon Corp. et al.*, Civil Action No. 2:20-cv-01972-CRE (W.D. Pa.) (the "Underlying Litigation"), served Non-Party Jeff Mortimer with a subpoena commanding that he appear for a deposition and produce highly personal and confidential documents relating to his compensation on October 27, 2022 in Boston, Massachusetts (the "Subpoena"). In the Underlying Litigation, Plaintiffs allege, on behalf of themselves and members of a putative class, that Defendants The Bank of New York Mellon Corporation ("BNY Corp.") and BNY Mellon, N.A. ("BNY Mellon") (collectively, "Defendants") breached investment management agreements with Plaintiffs and violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law

("UTPCPL") by investing Plaintiffs' assets in affiliated mutual funds without disclosing purported conflicts of interest and associated fees.

Mr. Mortimer, BNY Mellon's former Director of Investment Strategy, had no involvement in Plaintiffs' relationship with BNY Mellon and has no connection to the allegations in Plaintiffs' First Amended Complaint ("FAC").  Mr. Mortimer was a member of the Investment Strategy Committee ("ISC"), which makes investment recommendations relating to ***asset allocation***,[1] not the individual investment selections that Plaintiffs say underlie their claims.  As Defendants have offered, Plaintiffs can confirm Mr. Mortimer had no role relevant to the Underlying Litigation during Defendants' Rule 30(b)(6) depositions that the parties are currently scheduling.  Nevertheless, Plaintiffs insist on deposing Mr. Mortimer and seek in the Subpoena personally sensitive and confidential documents relating to his compensation.  Aside from being irrelevant, any questions as to Mr. Mortimer's compensation structure also can be answered during Defendants' Rule 30(b)(6) depositions, as Plaintiffs have requested a witness on compensation topics.  Plaintiffs apparently seek to impose an undue burden on Mr. Mortimer because, in a single e-mail, their BNY Mellon wealth manager disclosed Mr. Mortimer as overseeing asset allocation recommendations and as the manager of an affiliated mutual fund that Plaintiffs ***declined to purchase***.[2]  An irrelevant reference to Mr. Mortimer in a single e-mail cannot justify the Subpoena.

Thus, pursuant to Fed. R. Civ. P. 26 and 45, the Court should: (1) quash the Subpoena because it would impose undue burden on Mr. Mortimer, who has no involvement in Plaintiffs'

---

[1] Asset allocation involves dividing investments among different assets, such as stocks, bonds, and cash.   *See*   U.S.   Securities   and   Exchange   Commission,   Asset   Allocation, https://www.investor.gov/introduction-investing/getting-started/asset-allocation.

[2] Mr. Mortimer's roles of overseeing BNY Mellon asset allocation recommendations and as the manager of certain mutual funds also was publicly disclosed in the prospectuses of the mutual funds that Mr. Mortimer managed.  *See, e.g.*, https://sec.report/Document/0000881773-21-000031/.

relationship with BNY Mellon; and (2) enter a protective order providing that Mr. Mortimer is not required to appear for any deposition or produce any documents pursuant to the Subpoena.

## II.  BACKGROUND

### A.  Factual Allegations in the FAC

Plaintiffs are former investment management customers of BNY Mellon.  *See* FAC, attached as **Exhibit 1**, ¶ 1.  Plaintiffs allege that Defendants represented that BNY Mellon would act as a fiduciary and that its wealth management advisors: (1) do not have a financial incentive to make investment decisions; and (2) would not profit based on recommended investments.  *Id.* ¶¶ 2, 5.  Plaintiffs allege that these statements were misrepresentations because Defendants engaged in "self-dealing, conflicted transactions," including investing Plaintiffs' assets in mutual funds managed, issued, or sponsored by BNY Mellon or its affiliates, without disclosing this purported financial incentive to Plaintiffs.  *Id.* ¶¶ 6, 8, 10.

### B.  Current Procedural Posture

The parties are currently engaged in the first phase of discovery, which is set to close on December 16, 2022.  *See* Amended Case Management Order, attached as **Exhibit 2**, ¶ 2.  This first phase of discovery focuses on the requirements of Federal Rule of Civil Procedure 23, as well as the merits of the named Plaintiffs' claims.  *Id.*  Despite contesting their relevance, Defendants have nevertheless produced in discovery certain documents ("Solutions Matrices") that identify individual investment solutions, such as mutual funds, vetted by a committee of senior investment professionals—the Solutions Strategy Committee (the "SSC").  After evaluating a client's needs, risk tolerances, and goals, BNY Mellon's wealth managers can refer to the Solutions Matrices, among other tools, when selecting individual investments for a client's account.

Plaintiffs recently served Defendants with a Rule 30(b)(6) deposition notice directed to BNY Mellon.  *See* Rule 30(b)(6) Deposition Notice Directed to BNY Mellon, attached as

**Exhibit 3**. In the Rule 30(b)(6) deposition notice, Plaintiffs seek testimony regarding both: (1) the use and composition of the Solutions Matrices and decisions on how to invest client funds; and (2) information related to BNY Mellon's compensation structure. *Id.* ¶¶ 4, 9, 11, 22. The parties are currently in the process of meeting and conferring on the scope of this Rule 30(b)(6) deposition notice and scheduling the depositions.

      C.     **The Subpoena**

On September 27, 2022, Plaintiffs first expressed to Defendants their desire to depose Mr. Mortimer. *See* October 11, 2022 E-Mail Chain Between Plaintiffs' Counsel and Defendants' Counsel, attached as **Exhibit 4**. Defendants' counsel requested a proffer for the need to depose Mr. Mortimer. *Id.* In response, Plaintiffs claimed that Mr. Mortimer could have information regarding "conflicts of interest that arise from (1) his dual role as a fund manager and as an employee with responsibility within the wealth management division concerning asset allocation ***and fund selection***, and (2) his compensation in those roles." *Id.* (emphasis added). Defendants' counsel advised Plaintiffs that Mr. Mortimer was a member of the ***ISC***, responsible for ***asset allocation*** recommendations, not the ***SSC***, responsible for selecting ***individual investment vehicles*** to be included on the Solutions Matrix; Plaintiffs have asserted that only the latter committee is central to their claims. *Id.* Defendants' counsel further advised Plaintiffs' counsel that Mr. Mortimer's lack of involvement in selecting individual investments for BNY Mellon clients could be confirmed during the Rule 30(b)(6) deposition of BNY Mellon. *Id.*

Moreover, in support of their desire to depose Mr. Mortimer, Plaintiffs relied on a single e-mail in which Plaintiffs' BNY Mellon wealth manager recommended an affiliated mutual fund managed by Mr. Mortimer, whom he also disclosed as overseeing BNY Mellon's asset allocation recommendations. *Id.* As the undersigned explained to Plaintiffs' counsel, this purported "dual

role" has no relevance to Plaintiffs' claims in the FAC, and, in any event, Plaintiffs directed their BNY Mellon wealth manager *not* to purchase the affiliated mutual fund managed by Mr. Mortimer and instead to purchase a different fund.  *Id.*

Despite the fact that Mr. Mortimer has no connection to Plaintiffs or the Solutions Matrix, on October 13, 2022, Plaintiffs served the undersigned with the Subpoena.  *See* October 14, 2022 E-Mail Chain Between Plaintiffs' Counsel and the Undersigned, attached as **Exhibit 5**.  Consistent with statements made to Plaintiffs on October 10, 2022, the undersigned agreed to accept service of the Subpoena on Mr. Mortimer's behalf, expressly reserving all rights to object to the Subpoena and to move to quash it on any grounds.  *Id.*  In addition to seeking Mr. Mortimer's deposition testimony on October 27, 2022, Plaintiffs also requested: "(1) all documents describing your compensation from BNY; and (2) all documents reflecting any non-cash compensation or awards (e.g. stock or restricted stock) from BNY."  *See* Subpoena, attached as **Exhibit 6**.

On October 19, 2022, pursuant to Fed. R. Civ. P. 45, the undersigned sent Plaintiffs a letter objecting to the Subpoena on numerous grounds.  *See* October 19, 2022 Objection Letter, attached as **Exhibit 7**.  The undersigned and Plaintiffs met and conferred on October 21, 2022.  Plaintiffs have not withdrawn the Subpoena, and, thus, the instant Motion follows.

### III.   LEGAL STANDARDS

#### A.   Rule 26

The Court is required by Fed. R. Civ. P. 26(b)(2)(c) to "limit the frequency or extent of discovery otherwise allowed by the [Federal Rules of Civil Procedure] or by local rule if it determines that: (i) the discovery is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  *Cabi v. Boston's*

*Children's Hosp.*, No. 15-CV-12306-DJC, 2017 U.S. Dist. LEXIS 230174, at *5 (D. Mass June 21, 2017) (quoting Fed. R. Civ. P. 26(b)(2)(C)).  Thus, in order to minimize excessive expense, delay, and potential abuse of the process, the Federal Rules of Civil Procedure grant the courts the authority to, "for good cause, issue a [protective] order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure [or] discovery." *Id.* at *5-*6 (quoting Fed. R. Civ. P. 26(c)(1)(A)).

    **B.**    **Rule 45**

Relatedly, under Fed. R. Civ. P. 45, the Court "'must quash or modify a subpoena that . . . subjects a person to undue burden' on timely motion from a party or non-party." *See Satanic Temple, Inc. v. City of Boston,* Case No. 21-cv-10102, 2022 U.S. Dist. LEXIS 63827, at *8, (D. Mass. Apr. 6, 2022) (quoting *KinectUs LLC v. Bumble Trading LLC*, No. 21-MC-91665-ADB, 2021 U.S. Dist. LEXIS 243978, at *6 (D. Mass. Dec. 22, 2021)) (quashing a subpoena compelling a deposition where it imposed an undue burden on the deponent).  When ruling on such a motion, the Court must "weigh the need of the party seeking the discovery against any undue hardships created by permitting it," and consider the potential discovery's "relevance, the requesting party's need, the breadth of the request, and the burden imposed." *Id.* (quoting *KinectUs*, 2021 U.S. Dist. LEXIS 243978, at *6).  A finding of good cause to quash a subpoena must be based on a particular factual demonstration of potential harm. *Id.* (citing *Peoples v. Time Warner Cable, Inc.*, No. 3:16-CV-11398-MGM, 2017 U.S. Dist. LEXIS 102364, at *5 (D. Mass. June 30, 2017)).

**IV.**    **ARGUMENT**

The Court should quash the Subpoena in its entirety because it would impose an undue burden on Mr. Mortimer, a former employee.  First, as advised by Defendants, Plaintiffs can confirm that Mr. Mortimer was involved in determining asset allocations—***not*** individual investment selections—and can obtain information relating to his compensation structure in

- 6 -

Defendants' Rule 30(b)(6) depositions. Therefore, Plaintiffs can obtain any purportedly needed information from Defendants, without imposing an undue burden on Mr. Mortimer. Second, none of the information Plaintiffs seek from Mr. Mortimer is relevant. The asset allocation recommendations over which Mr. Mortimer was responsible are not at issue in the FAC, which concerns a purported conflict-of-interest arising from investing client assets in affiliated mutual funds and which nowhere mentions or challenges asset allocation decisions. Finally, Plaintiffs' overly broad requests for documents relating to Mr. Mortimer's compensation information are harassing and vexatious and should be rejected out of hand.

  **A.**  **Plaintiffs Can Obtain the Information Sought From Mr. Mortimer Elsewhere**

As a threshold matter, notwithstanding their irrelevance to this case, any testimony or documents that Plaintiffs might seek to obtain from Mr. Mortimer could be readily obtained from Defendants, including during their Rule 30(b)(6) depositions. "If the material sought by a subpoena is readily available, either from a party to the action or from a public source, obtaining it through subpoena on a nonparty often will create an undue burden." *In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig.*, No. MDL 13-2419-FDS, 2013 U.S. Dist. LEXIS 161652, at *35-*36 (D. Mass. Nov. 13, 2013) (quoting *Gray v. Town of Easton*, No. 3:12cv166, 2013 U.S. Dist. LEXIS 75062, at *8-*9 (D. Conn. May 29, 2013)); *see also Satanic Temp.*, 2022 U.S. Dist. LEXIS 63827, at *11-*12. This principle directly applies here. During their Rule 30(b)(6) depositions, Defendants can confirm that Mr. Mortimer was not involved in the SSC or individual investment selection but rather was involved in the ISC and asset allocation recommendations and also can provide information regarding Mr. Mortimer's compensation structure. During the meet and confer, Plaintiffs resisted that offer under the mistaken belief that

they have the right to burden Mr. Mortimer, a non-party, notwithstanding the availability of the information they seek from BNY Mellon, a party to the Underlying Litigation.

**B.     The Information Plaintiffs Seek From Mr. Mortimer Is Irrelevant**

Similarly, the information Plaintiffs seek from Mr. Mortimer is not relevant to the named Plaintiffs' claims in the FAC or the Rule 23 requirements. Mr. Mortimer's purported "dual role"—that is, as the manager of an affiliated mutual fund and as the Chief Investment Strategist responsible for overseeing BNY Mellon's asset allocation recommendations—does not bear on decisions made or actions taken by the SSC or individual wealth managers, relating to individual investment selection. Moreover, specifically with respect to the named Plaintiffs' claims, Plaintiffs rely on a reference to Mr. Mortimer in a *single* e-mail in which BNY Mellon's Wealth Managers recommended an investment in an affiliated mutual fund that Mr. Mortimer managed. Plaintiffs directed BNY Mellon not to invest in the fund managed by Mr. Mortimer and, instead, to invest in a *different* fund. Thus, Mr. Mortimer's job responsibilities and compensation have no relevance to Plaintiffs' claims, and the Subpoena therefore imposes an undue burden on him. *See Satanic Temp.*, 2022 U.S. Dist. LEXIS 63827, at *8; *KinectUs*, 2021 U.S. Dist. LEXIS 243978, at *6. During the parties' meet and confer, Plaintiffs could not identify any specific allegations relating to asset allocation in the FAC or any material revealed in discovery conducted to date suggesting that Mr. Mortimer possesses knowledge relevant to the Plaintiffs' claims. Further, Plaintiffs rejected Mr. Mortimer's offer to provide a sworn declaration that he had no involvement in Solutions Strategy Committee individual investment selection or that any of his recommendations relating to asset allocation were influenced by a desire to increase BNYM customers' investments in affiliated mutual funds.

### C. Plaintiffs' Request for Mr. Mortimer's Compensation is Harassing

Finally, Plaintiffs' requests for testimony and documents regarding Mr. Mortimer's compensation are harassing and vexatious, and would implicate highly confidential and sensitive personal information of a non-party. In the Subpoena, Plaintiffs request "(1) all documents describing your compensation from BNY; and (2) all documents reflecting any non-cash compensation or awards (e.g. stock or restricted stock) from BNY." *See* Subpoena. As stated above, documentation regarding Mr. Mortimer's compensation, if truly relevant, is available from BNY Mellon, a party to the Underlying Litigation. Further, information relating to Mr. Mortimer's compensation from BNY Mellon, including non-cash compensation or awards, has no relevance to Plaintiffs' claims, for the reasons described above. Regardless, Plaintiffs' request for ***all*** of Mr. Mortimer's compensation information is grossly overbroad and unduly burdensome. Plaintiffs do not limit their request for documents relating to Mr. Mortimer's compensation information by time, scope, subject matter, or any other appropriate criteria. During the meet and confer process, Plaintiffs acknowledged that Mr. Mortimer's compensation information is available from BNY Mellon and expressed a willingness to seek a narrowed scope of documents relating to Mr. Mortimer's compensation from BNY Mellon directly, as they should have done before serving the Subpoena.[3] Thus, the Court should relieve Mr. Mortimer of having to produce any documents pursuant to the Subpoena.

---

[3] Indeed, in the Underlying Litigation, Plaintiffs have sought compensation information relating to other employees directly from BNY Mellon but never made a request for such information from BNY Mellon relating to Mr. Mortimer before serving him with the Subpoena.

## V. CONCLUSION

For the foregoing reasons, Mr. Mortimer respectfully requests that the Court enter an Order quashing the subpoena and providing that Mr. Mortimer is not required to appear for any deposition or produce any documents pursuant to the Subpoena.[4]

Dated: October 21, 2022

**REED SMITH LLP**

/s/ David A. Casale
David A. Casale
(MA 677879)
Perry A. Napolitano
(*pro hac vice* forthcoming)
Justin J. Kontul
(*pro hac vice* forthcoming)
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
T: (412) 288-3131
F: (412) 288-3063
dcasale@reesmith.com
pnapolitano@reedsmith.com
jkontul@reedsmith.com

---

[4] At a minimum, for the reasons stated above, Mr. Mortimer's deposition should be deferred until after the 30(b)(6) depositions of BNY Mellon occur.

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this October 21, 2022 this document has been filed and served upon the Court and all counsel of record through the Court's ECF system, and that an electronic copy of the foregoing has been served upon Plaintiffs' counsel.

*/s/ David A. Casale*